UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARISSE FORD,

    Plaintiff,

v.

NANCY A. BERRYHILL,

    Defendant.

Case No. C17-1343JLR

**ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS**

## I. INTRODUCTION

Plaintiff Charisse Ford seeks review of the denial of her application for disability insurance and supplemental security income benefits. Ms. Ford contends the Administrative Law Judge ("ALJ") misevaluated the medical opinion evidence concerning her mental impairments and her testimony. (Op. Br. (Dkt. # 8) at 1.) Ms. Ford contends these errors impacted the ALJ's residual functional capacity determination and the findings at Step Five of the disability evaluation process. (*Id.*) As discussed below, the court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

///

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Ford has not engaged in substantial gainful activity since August 15, 2012.

**Step two:** Ms. Ford has the following severe impairments: degenerative disc disease; affective disorder; and anxiety disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual functional capacity:** Ms. Ford can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.97(b). Ms. Ford can stand and/or walk with normal breaks for about four hours in an eight-hour workday. She can sit with normal breaks for a total of about six hours in an eight-hour workday. Ms. Ford can frequently stoop and kneel. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. Ms. Ford can occasionally crouch and crawl. Ms. Ford is capable of unskilled work involving short and simple tasks. She can have superficial contact with supervisors for work tasks, and can have occasional changes to the work environment. Ms. Ford is not able to perform at a production rate pace, but can perform goal-oriented work.

**Step four:** Ms. Ford cannot perform past relevant work, including institutional cook, receptionist, teacher assistant, home attendant, and packager.

**Step five:** Ms. Ford can perform jobs that exist in significant numbers in the national economy, including housekeeping. Therefore, Ms. Ford has not been disabled since August 15, 2012, the alleged disability onset date.

(Administrative Record ("AR") (Dkt. # 7) at 27-36.)[3] The Appeals Council denied Ms. Ford's request for review, thus rendering the ALJ's decision final. (AR at 5.)

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

[3] Citations to the Administrative Record are made using the page numbering as applied by the court's docketing header rather than the numbering appearing in the lower right hand corner of the page.

## III. ANALYSIS

### A. Evaluation of the Medical Evidence Concerning Ms. Ford's Mental Impairments

Ms. Ford contends that the ALJ erred in evaluating the medical evidence in the record concerning her mental impairments. (*See* Op. Br. at 2-9.) Questions of credibility and conflicts in the evidence are solely the ALJ's responsibility, so long as the medical evidence in the record is not conclusive. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ's findings resolving credibility and evidentiary issues "must be supported by specific, cogent reasons." *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Where the ALJ rejects the opinion of an examining doctor, even if it is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995)). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The court may also draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at755. The court now reviews the ALJ's evaluation of the relevant medical evidence.

#### 1. R.A. Cline, Psy.D.

Dr. Cline examined Ms. Ford on December 6, 2012. (AR at 316-23.) During the

examination, Dr. Cline conducted a clinical interview, during which she documented Ms. Ford's subject complaints and her own observations. (*Id.* at 316-17.) Dr. Cline noted Ms. Ford was "visibly anxious with her hands trembling and being very tearful throughout the initial portion of the interview." (*Id.* at 316.) Dr. Cline also remarked that she did not have records available to review. (*Id.*)

Dr. Cline conducted several tests during her examination of Ms. Ford. (*Id.* at 317.) Ms. Ford's score on the Beck Anxiety Inventory ("BAI") "indicate[d] a marked to severe level of anxiety," which Dr. Cline stated was congruent with Ms. Ford's presentation during the examination. (*Id.*) Dr. Cline further noted that Ms. Ford's score on the Beck Depression Inventory-II "indicate[d] a moderate to marked level of depression at this time and over the last two weeks." (*Id.*) Based upon her observations, Dr. Cline diagnosed Ms. Ford with depressive disorder, generalized anxiety disorder with features of panic disorder, and posttraumatic stress disorder. (*Id.* at 318.) Dr. Cline additionally concluded that Ms. Ford had marked limitations in both her ability to communicate and perform effectively in a work setting, and her ability to complete a normal work day or week without interruptions from her psychological symptoms. (*Id.* at 318-19.)

The ALJ rejected Dr. Cline's opinions on Ms. Ford's mental limitations because (1) they were based on a single examination; and (2) Dr. Cline relied heavily on Ms. Ford's subjective report of symptoms. (*Id.* at 33.) The ALJ accepted Dr. Cline's opinion "that the most that the claimant can still do are unskilled tasks with reduced social

interaction because of severe mental impairments." (*Id.*)

The ALJ erred in rejecting Dr. Cline's opinions. He gave only two vague reasons, neither of which satisfies the "specific and legitimate" standard. First, the fact that Dr. Cline performed only a single examination is not a legitimate reason to reject her opinion. Examining doctors commonly conduct only a single examination. If the court were to reject medical opinions every time they were based on a single examination, then only opinions from treating doctors would be considered, contrary to federal regulation. *See* 20 C.F.R. § 416.927(c) (noting that the Social Security Administration ("SSA") "will evaluate every medical opinion we receive," including opinions from non-treating doctors). Furthermore, the ALJ contradicted his own logic by placing "significant weight" on the opinions of the state-agency reviewers, Jan Lewis, Ph.D. and Patricia Kraft, Ph.D., neither of whom performed even a single examination. If an opinion should be rejected solely because it was based on a single examination, then one that was based on no examination at all should also be rejected. As that is not the law, the ALJ was not entitled to reject Dr. Cline's opinion on the basis of her having performed a single exam.

Second, the ALJ's rejection of Dr. Cline's opinions because they were based on Ms. Ford's subjective complaints, without more, is insufficient. An ALJ does not provide clear and convincing reasons for rejecting an examining psychologist's opinion by questioning the credibility of the patient's complaints where the psychologist does not discredit those complaints, and supports her ultimate opinion with her own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). At no point does the record

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 5

indicate that Dr. Cline discredited Ms. Ford's complaints. (*See* AR at 316-23.) To the contrary, the record indicates that Dr. Cline supported her opinions with her observations and testing. (*See id.*) Dr. Cline reported that Ms. Ford "achieved a score of 44 on the BAI[,] which indicates a marked to severe level of anxiety," and was "congruent with her presentation in the interview." (AR at 317.)

The Ninth Circuit's recent opinion in *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017), is informative. The *Buck* Court noted that psychiatric evaluations "will always depend in part on the patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." *Id.* at 1049 (internal quotation marks omitted) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. The Ninth Circuit further noted that clinical interviews and mental status evaluations "are objective measures and cannot be discounted as 'self-report.'" *Id.* The ALJ thus erred in rejecting Dr. Cline's opinions as based on Ms. Ford's subjective reports.[4] Because none of the reasons given by the ALJ qualifies as "specific and legitimate," the court concludes that the ALJ erred in rejecting Dr. Cline's opinions.

### 2. Katrina L. Higgins, Psy.D.

Dr. Higgins examined Ms. Ford on July 25, 2013. (AR at 446-52.) Dr. Higgins

---

[4] The ALJ also discounted Dr. Cline's opinion because she "completed check-box forms," which the ALJ felt gave little insight into what Ms. Ford can do. (AR at 33.) The fact that a doctor uses a check-box form is not a valid legal reason to discount an opinion. *Garrison v. Colvin*, 759 F.3d 995, 1023 n.17 (9th Cir. 2014) (discounting an opinion solely because it was given on a check-box form "rests on a mistaken factual premise").

reviewed records from Seattle Pain Center, Dr. Cline's report, records from Valley Cities Counseling and Consultation, and an SSA Adult Function Report. (*Id.* at 446.) Dr. Higgins conducted a diagnostic interview, including a mental status exam. (*Id.*) She diagnosed Ms. Ford with chronic posttraumatic stress disorder and major depressive disorder, with rule-out diagnoses for attention deficit hyperactive disorder and pain disorder. (*Id.* at 450.) Dr. Higgins assessed Ms. Ford a GAF[5] score of 30. (*Id.*)

Based on her findings, Dr. Higgins opined that Ms. Ford "does not appear able to manage funds on her own behalf" due to the severity of her symptoms. (*Id.* at 451.) Dr. Higgins further opined that "Ms. Ford is not currently able to function adequately in any work environment" because she has difficulty leaving her home at times due to anxiety; has poor concentration and difficulty completing tasks; has days where she does not leave her bed; is not able to interact with others appropriately due to her anxiety and depression; and had serious difficulty interacting one-on-one with Dr. Higgins during the evaluation. (*Id.*)

The ALJ rejected Dr. Higgins's opinions because (1) he found them to be contradicted by Ms. Ford's daily activities; (2) the doctor relied too heavily on Ms. Ford's subjective report of symptoms; and (3) Dr. Higgins used language that made her opinions appear speculative. (*Id.* at 33-34.) As with Dr. Cline's opinions, Dr. Higgins's

---

[5] GAF, or "Global Assessment of Functioning" is a numeric scale from 0 to 100 that was intended to reflect "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Golden v. Shulkin*, --- Vet. App. ---, 2018 WL 1036923, at *3 (Vet. App. Feb. 23, 2018).

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 7

reliance on Ms. Ford's subjective reports was not a specific and legitimate reason to reject her opinions. Nor do the remaining reasons meet the "specific and legitimate" standard.

The ALJ claimed that Dr. Higgins's opinions should be rejected because she assigned Ms. Ford a GAF score of 30, which the ALJ interpreted to mean Ms. Ford would not be able to complete daily activities such as personal care, preparing meals, shopping for groceries, and getting her children to school. (*See* AR at 33.) The ALJ took issue with the fact that Ms. Ford could perform these activities. (*Id.* at 28.) But the ALJ then noted that the American Psychiatric Association has dropped the use of GAF scores because of their "conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." (*Id.* at 34.) If the GAF scores lack clarity, then the ALJ could not have concluded what a GAF score of 30 meant regarding Ms. Ford's capabilities. Thus, the ALJ's explanation is not a specific or legitimate reason to reject Dr. Higgins's opinions.

The ALJ's rejection of Dr. Higgins's opinions as speculative is also not supported by the record. While it is true that Dr. Higgins used the phrases "appears to have" and "it is likely" in her report, such parsing of Dr. Higgins's language does not accurately reflect the tone of her report. *See Reddick*, 157 F.3d at 722-23 (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). Dr. Higgins clearly stated in her conclusions that Ms. Ford "is not currently able to function adequately in any work environment. She had [sic] difficulty

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 8

leaving her home at times due to her anxiety. She has poor concentration and difficulty completing tasks. . . . She is not able to interact with others appropriately due to her anxiety and depression." (AR at 451.) This language was far from speculative. The ALJ therefore erred in discounting Dr. Higgins's opinions.

### 3. Victoria McDuffee, Ph.D.

Dr. McDuffee examined Ms. Ford on November 26, 2013. (*Id.* at 532-39.) Dr. McDuffee reviewed Dr. Cline's report, conducted a clinical interview, and administered several tests. (*Id.*) Dr. McDuffee's report does not identify the full range of tests she performed, but does indicate that she administered "Trail Making Part A and B" and the Minnesota Multiphasic Personality Inventory 2 RF. (*Id.* at 537.) Dr. McDuffee diagnosed Ms. Ford with generalized anxiety disorder with some panic symptoms, depressive disorder, and personality disorder. (*Id.* at 533-34.) Dr. McDuffee additionally concluded that Ms. Ford had moderate limitations on her ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal work day and work week without interruptions from her psychologically based symptoms. (*Id.* at 534.) However, Dr. McDuffee also concluded that Ms. Ford's current impairments were primarily the result of alcohol or drug use within the past 60 days. (*Id.* at 535.)

The ALJ rejected Dr. McDuffee's opinions because "the only evidence she relied on in assessing the claimant's mental [residual functional capacity] was, apart from the claimant's statements and her own exam, Dr. Cline's report." (*Id.* at 33.) As the court

has already found that it was error to reject Dr. Cline's opinions, *see supra* § III.A.1, the ALJ's rejection of Dr. McDuffee's opinion for its reliance on Dr. Cline's report is also error. The ALJ's reasoning further fails because, as the ALJ acknowledged, Dr. McDuffee relied on "her own exam" in reaching her conclusions. (*See* AR at 33.) If there were flaws in that examination, the ALJ failed to articulate them, and thus his decision to reject Dr. McDuffee's opinions was not supported by substantial evidence.

    4. <u>Tasmyn Bowes, Psy.D.</u>

Dr. Bowes examined Ms. Ford on May 12, 2015. (*Id.* at 540-53.) Dr. Bowes reviewed Dr. McDuffee's report, conducted a clinical interview, and administered a number of tests, including a mental status exam, Trail Making Test A and B, Rey 15-Item Memory Test, Beck Depression Inventory, and BAI. (*Id.* at 540-42.) Dr. Bowes diagnosed Ms. Ford with major depressive disorder, recurrent, severe; posttraumatic stress disorder; and methamphetamine dependence in sustained full remission. (*Id.* at 542.) Dr. Bowes found that Ms. Ford had marked limitations in her ability to (1) "understand, remember, and persist in tasks by following detailed instructions," (2) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision," (3) maintain appropriate behavior in a work setting," and (4) "complete a normal work day and work week without interruptions from psychologically based symptoms." (*Id.* at 543.)

The ALJ rejected Dr. Bowes's opinion "because she . . . only reviewed the prior report from Dr. McDuffee." (*Id.* at 33.) This reasoning is contradicted by the record, as

Dr. Bowes conducted her own examination and performed her own tests on Ms. Ford. (*See* AR at 540-53.) Similarly, as it was erroneous to reject the opinions of Dr. McDuffee, the ALJ erred in rejecting Dr. Bowes's opinion for its reliance on Dr. McDuffee's report.

### 5. William R. Wilkinson, Ed.D.

Dr. Wilkinson examined Ms. Ford on November 25, 2015. (*Id.* at 599-606.) He conducted a clinical interview but did not review any records, nor did he indicate that he conducted any psychological tests on Ms. Ford. (*Id.*) Dr. Wilkinson diagnosed Ms. Ford with generalized anxiety disorder, posttraumatic stress disorder, major recurrent depressive disorder, and attention deficit disorder or attention deficit hyperactive disorder. (*Id.* at 601.)

Dr. Wilkinson found that Ms. Ford was unable to perform activities within a schedule, maintain regular attendance and be punctual within normal customs, complete a normal work day or work week without interruptions from psychologically-based symptoms, and maintain appropriate behavior in a work setting. (*Id.* at 602.) Dr. Wilkinson opined that "any attempts to make a return to work or training for work . . . would simply not work out at this time, as she is not able to work and needs further MH [mental health] help . . . ." (*Id.*)

The ALJ's only stated reason for rejecting Dr. Wilkinson's opinion was that he answered "none" in response to the question of what records he reviewed. (AR at 33.) This is not a specific and legitimate reason for rejecting Dr. Wilkinson's opinions, and

was thus error.[6] *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (finding error where ALJ gave conclusory reasons for rejecting doctor's opinions).

### B. Consideration of Ms. Ford's Testimony

The ALJ found Ms. Ford not entirely credible regarding the intensity, persistence, and limiting effects of her physical and mental symptoms. (AR at 31.) He found that Ms. Ford was only capable of performing light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), but with fewer limitations than she alleged. (AR at 30-31.) Ms. Ford contends that the ALJ erred in finding her not entirely credible regarding both her physical and mental symptoms. (Op. Br. at 8-14.)

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom; she does not have to show that the impairment could reasonably be expected to cause the severity of the symptom she alleged. *Id.*

If the claimant satisfies the first step, and there is no evidence of malingering, the

---

[6] To the extent the ALJ relied on the same arguments he made in rejecting the opinions of Drs. Cline, Higgins, McDuffee, and Bowes, those arguments fail as discussed above.

ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet." *Id.* The ALJ here offered five general reasons for rejecting Ms. Ford's testimony, none of which are availing.

### 1. Consistency with Medical Evidence - Physical Symptoms

The ALJ rejected Ms. Ford's testimony on the severity of her physical symptoms in part because he found it to be inconsistent with the medical evidence. He accepted that Ms. Ford suffers from severe degenerative disc disease but found that her symptoms were not as limiting as she alleged. (*See* AR at 27, 31.)

In identifying medical evidence to support his conclusion, the ALJ "cannot simply pick out a few isolated instances" of medical health, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

The ALJ based his conclusion of inconsistency on several points in the medical record indicating that the structure of Ms. Ford's spine was normal, and on reports that she could walk with a normal gait. (AR at 31.) A deeper look at the medical record, however, reveals that these limited citations do not support the ALJ's conclusion.

First, the ALJ noted that during a September 2013 examination, Ms. Ford's thoracic and lumbar spine were deemed normal, and she had no evidence of scoliosis, boney changes, boney tenderness, or muscle spasms. (*Id.* at 27.) The ALJ failed to discuss, however, that Ms. Ford received a Toradol injection at that appointment to treat her low back pain. (*Id.* at 461.) Thus, the ALJ's reference to this appointment does not

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 13

accurately reflect the content of the record, and his rejection of Ms. Ford's testimony on this basis is not supported by substantial evidence. *See Reddick*, 157 F.3d at 722-23.

Second, the ALJ pointed to several places in the medical record indicating that Ms. Ford walked normally. (AR at 31.) Again, this is a selective recitation of the evidence that fails to consider the record as a whole. *See Attmore*, 827 F.3d at 877-78. The record is replete with occasions between January 2013 and October 2015 at which Ms. Ford presented with an antalgic gait. (*See* AR at 409, 415, 515, 519, 527, 563, 592, 596.) This is not to say that the ALJ was required to find that Ms. Ford had trouble walking, but simply that he must provide more specificity than the several instances of Ms. Ford walking normally in order to use that as a basis to discredit her testimony.

Third, the ALJ noted that x-rays of Ms. Ford's hips in May 2015 were normal. (*Id.* at 31.) This reveals little about the severity of her symptoms, however, as the reviewing doctor stated that because Ms. Ford's hip x-rays were normal, "it seems probable that her symptoms are coming from her back rather than from the hip joints themselves." (*Id.* at 765.) In sum, the inconsistencies the ALJ cited between Ms. Ford's testimony regarding her physical symptoms and the medical record were not specific, clear and convincing reasons to discredit Ms. Ford's testimony.

2. <u>Consistency with Medical Evidence - Mental Symptoms</u>

The ALJ rejected Ms. Ford's testimony regarding her mental symptoms based on a similarly incomplete review of the medical evidence. He noted that Ms. Ford presented as "healthy, coherent and oriented" during a September 2013 exam, although he did not

DECISION TO DENY BENEFITS - 14

mention that the exam was to address "blood in urine, low back pain, and difficulty urinating." (*See id.* at 31, 460-61.) The ALJ further noted that Ms. Ford's recent and remote memory were intact, and that her attention span, concentration, and functioning were all normal based on notes from a separate September 2013 exam; but again, he failed to mention that the exam was focused on Ms. Ford's obstructive sleep apnea rather than her mental health. (*See id.* at 31, 463-65.) There is no indication that the treatment providers in either case focused at all on Ms. Ford's mental health symptoms, apart from a note in the sleep apnea exam that Ms. Ford suffers from depression and anxiety. (*See id.* at 465.) Elsewhere, the record is replete with notes from Ms. Ford's providers that she was anxious and depressed throughout the period of her claimed disability. (*See id.* at 326, 328, 333, 497, 505, 509, 609, 620, 630, 633, 637, 671.) The few instances cited by the ALJ to establish inconsistencies between the medical record and Ms. Ford's allegations are not supported by substantial evidence, and thus the ALJ erred in rejecting her testimony on this basis.

3. Ms. Ford's Criminal History

The ALJ also rejected Ms. Ford's testimony based on her prior criminal history, which included charges of reckless driving and negligent driving, as well a felony conviction for unlawful possession of a controlled substance with intent to deliver. (*Id.* at 32.) The ALJ failed to explain how these charges affected Ms. Ford's credibility, other than to conclude that her criminal history presents a non-disability-related barrier to employment. (*See id.*) That is not a specific, clear and convincing reason to reject her

testimony. Ms. Ford's crimes are not crimes of dishonesty, nor is it acceptable to assume that someone would apply for benefits simply because they have a non-disability-related barrier to employment.

### 4. Ms. Ford's Compliance with Treatment

The ALJ discredited Ms. Ford's testimony because he found she had not been entirely compliant with treatment. (*Id.* at 32-33.) A claimant's failure to follow prescribed treatment "may 'cast doubt on the sincerity of'" her testimony. *Trevizo*, 871 F.3d at 680 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ pointed to Ms. Ford's absence at a number of therapy sessions, and her failure to quit smoking as failure to comply with her treatment. (AR at 32-33.)

Once again, the ALJ failed to adequately support his conclusion. The ALJ did not examine why Ms. Ford missed her therapy sessions, or how these absences contradicted her testimony, particularly given her claims of social anxiety and occasions where her depression keeps her from leaving her house. (*See id.* at 30.) Under the prior and current Social Security Rulings ("SSRs"),[7] the ALJ should not reject a claimant's symptom testimony based on a failure to comply with treatment without first considering why the claimant may not have complied with her treatment. SSR 96-7p, 1996 WL 374186, at *7 (1996); SSR 16-3p, 2017 WL 5180304, at *9 (2017); *see also Nguyen v. Chater*, 100

---

[7] SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 16

F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (internal quotation marks omitted) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Nothing in the ALJ's decision indicated that he considered why Ms. Ford missed her therapy sessions, and thus the ALJ erred in using this as a basis to discredit Ms. Ford's testimony.

Ms. Ford's failure to quit smoking is similarly unavailing. *See Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000) (rejecting the ALJ's assertion that the plaintiff had not complied with treatment because she failed to quit smoking despite evidence that it could worsen her condition). The ALJ thus erred in discrediting Ms. Ford's testimony based on an alleged non-compliance with treatment.

5. Ms. Ford's Daily Activities

Lastly, the ALJ discounted Ms. Ford's testimony because he found it inconsistent with her daily activities. (*See* AR at 32.) An ALJ may consider a claimant's daily activities in assessing his or her testimony. But daily activities that do not contradict a claimant's testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ noted Ms. Ford can complete her own personal care (albeit with pain that occasionally limits her ability to dress); ensures her children are ready for school; does household chores at times; prepares meals such as heating up frozen foods; and "goes

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 17

outside frequently, but has days where she isolates in her residence." (AR at 28.) These are the bare minimum elements of leading a normal life, and do not detract from Ms. Ford's credibility. *See Reddick*, 157 F.3d at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair*, 885 F.2d at 603). Nor does the fact that Ms. Ford went on a single camping trip in late August 2013 support the ALJ's decision to discredit her. (*See* AR at 32.)

The ALJ also pointed to the fact that Ms. Ford worked on updating her resume with WorkSource, a partnership that provides training services for job seekers, in August 2012 as proof that she does not have difficulty interacting with others. This isolated incident, which took place around the onset of Ms. Ford's alleged disability, does not contradict her testimony, particularly when viewed in light of the record as a whole.

In sum, the ALJ failed to identify specific, clear and convincing reasons to discount Ms. Ford's testimony. Accordingly, the court finds that he committed error.

**C.    Harmful Error**

The court cannot consider an error harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

DECISION TO DENY BENEFITS - 18

different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The court finds the ALJ harmfully erred because the ALJ misevaluated the opinions of Drs. Cline, Higgins, McDuffee, Bowes, and Wilkinson, in addition to Ms. Ford's testimony. The residual functional capacity determination accordingly fails to account for all limitations.

Ms. Ford asks the court to remand for an award of benefits. (Op. Br. at 15-16.) As the ALJ has committed reversible error, the court has the discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). But remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 808 F.3d 1041, 1044 (9th Cir. 2017). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076.

The appropriate remedy in this case is remand for further proceedings. There is conflicting evidence regarding the extent of Ms. Ford's limitations. For example, the mental health experts did not entirely agree as to Ms. Ford's ability to work a complete workday and workweek without interruptions due to her mental health symptoms. (*See* AR at 319, 451, 534, 543, 602.) Similarly, the record does not reveal whether there are

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 19

jobs existing in significant numbers in the national economy that Ms. Ford could perform if her physical impairments were properly assessed. The court is not in a position to weigh the evidence or make these determinations. *See Leon*, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather than remand for immediate payment of benefits, where the record reveals conflicts, ambiguities, or gaps).

On remand, the ALJ should reevaluate Ms. Ford's residual functional capacity, taking into account the opinions of Drs. Cline, Higgins, McDuffee, Bowes, and Wilkinson, as well as Ms. Ford's allegations. The ALJ must also reevaluate his conclusions at Steps Four and Five of the disability determination in light of any changes to Ms. Ford's residual functional capacity.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED, and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 30th day of April, 2018.

JAMES L. ROBART
United States District Judge